ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/27/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**EILEEN CONNELL,**

            Plaintiff,

   - against -

**KEVIN C. JOHNSON and NEOGENOMICS, INC.,**

            Defendants.

20 Civ. 1864 (LLS)

**MEMORANDUM & ORDER**

---

    Plaintiff brought this action against defendants to recover short-swing profits pursuant to Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78p(b). Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted. For the following reasons, the motion is granted.

## BACKGROUND

    The following facts are as alleged in the complaint (Dkt. No. 1).

    Defendant Kevin C. Johnson is a director of NeoGenomics, Inc. ("NeoGenomics"), a cancer diagnostics and pharmaceutical services company. Plaintiff Eileen Connell is a shareholder of NeoGenomics, and brings this action "in the right and for the benefit of NeoGenomics, which is named as a defendant solely to bring all necessary parties before the Court." Compl. ¶ 5.

    On November 9, 2018, Johnson sold 46,000 shares of NeoGenomics common stock at $17.01 per share and 20,007 shares

at $17.08 per share. On December 21, 2018, Johnson "placed a trade to purchase" 26,000 shares of NeoGenomics common stock at $11.60 per share, resulting in a profit of $142,060.49. Id. ¶ 10.

On December 27, 2018, Johnson reported the cancellation of the December 21, 2018 transaction.

Connell sent a letter to NeoGenomics demanding that it recover the short-swing profits Johnson received from the transactions. NeoGeonomics responded that there were no profits because Johnson's December 21, 2018 transaction had been cancelled. NeoGenomics also stated that Johnson paid $60,000 to NeoGenomics as part of a "settlement and disgorgement." Id. ¶ 14. Connell requested information about the disgorgement and settlement agreement, which NeoGeonomics did not provide.

Connell filed this action on March 3, 2020 to recover Johnson's short-swing profits. Defendants moved to dismiss the complaint on May 4, 2020.

**DISCUSSION**

On a motion to dismiss under Rule 12(b)(6), the court accepts "all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." Kelly-Brown v. Winfrey, 717 F.3d 295, 304 (2d Cir. 2013). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

> Section 16(b) of the Exchange Act states,
>
> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.

15 U.S.C. § 78p(b).

To establish liability under Section 16(b), a plaintiff must prove that "there was (1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." Gwozdzinsky v. Zell/Chilmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998).

Defendants argue that there was no purchase of securities

under Section 16(b) because Johnson cancelled the December 21, 2018 transaction to purchase the 26,000 shares. Plaintiff argues that a purchase occurred when Johnson placed that trade to purchase the shares.

> Section 3 of the Exchange Act provides that, "unless the context otherwise requires," the term "purchase" "include[s] any contract to buy, purchase, or otherwise acquire." 15 U.S.C. § 78c(a), (a)(13). This language has been interpreted to make an individual a "purchaser" when he or she "incurred an irrevocable liability to take and pay for the stock." Blau v. Ogsbury, 210 F.2d 426, 427 (2d Cir. 1954). See also Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 751, 95 S. Ct. 1917, 44 L.Ed.2d 539 (1975) ("[T]he holders of puts, calls, options, *and other contractual rights or duties to purchase* or sell securities have been recognized as 'purchasers' or 'sellers' of securities for purposes of Rule 10b-5, not because of a judicial conclusion that they were similarly situated to 'purchasers' or 'sellers,' but because the definitional provisions of the 1934 Act themselves grant them such a status." (emphasis added)).
>
> The plaintiffs argue from this definition that a purchase occurs when and where an investor places a buy order. Other courts considering similar claims have unanimously rejected this construction.

Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co., 753 F. Supp. 2d 166, 177 (S.D.N.Y. 2010).

> With these points in mind, it is apparent that the critical moment in the initial 'purchase' or 'sale,' for the purpose of determining when that transaction occurred within the meaning of § 16(b), is that point at which the investor becomes irrevocably committed to the transaction and, in addition, no longer has control over the transaction in any way that could be turned to speculative advantage by the investor. It is at that moment that the decision to invest is made and the power to manipulate the transaction is lost. Insofar as the six-month rule is a presumption concerning the motivation of that decision, it is the moment of that decision that governs the construction of § 16(b). The technicalities of stock transfers, such as the passing of title or the exchange of the shares are, by themselves, of no import for § 16(b) purposes.

Prager v. Sylvestri, 449 F. Supp. 425, 432-33 (S.D.N.Y. 1978). See also Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 67 (2d Cir. 2012) ("Our decision in Radiation Dynamics, Inc. v. Goldmuntz, 464 F.2d 876 (2d Cir. 1972), also lends support to the notion that a securities transaction occurs when the parties incur irrevocable liability."); Olagues v. Perceptive Advisers LLC, No. 15-CV-1190 (AJN), 2016 WL 4742310, at *4 (S.D.N.Y. Sept. 9, 2016) ("Perceptive incurred an 'irrevocable obligation' to exercise the puts and sell the underlying shares of Repros stock at 5:30 pm Eastern Time on Friday, March 15, 2013. That was the last moment that Perceptive could have submitted instructions not to exercise its puts.").

Johnson's placement of the trade to purchase the shares on December 21, 2018 does not constitute a purchase under the Exchange Act. Because he cancelled that transaction, he had not incurred an irrevocable obligation to pay for the stock. As reported on his Form 4/A, Johnson owned 77,866 shares of NeoGenomics stock following his November 9, 2018 sales of stock, which is the same number of shares he owned on December 27, 2018, the date he reported the cancellation of the December 21, 2018 transaction. Eldridge Decl. Exs. A, C.

Plaintiff argues that a rescission of a purchase of stock does not negate Section 16(b) liability, citing Volk v. Zlotoff,

285 F. Supp. 650 (S.D.N.Y. 1968). The defendants in <u>Volk</u> sold and exercised their options to purchase stock between June and August of 1967, and then rescinded their exercise of stock options and returned their shares months later in October. In this case, however, Johnson did not rescind a purchase of shares; rather, a purchase never occurred because he cancelled the transaction and was not irrevocably committed to it.

Accordingly, Johnson did not purchase shares or earn short-swing profits in violation of Section 16(b) of the Exchange Act.

**CONCLUSION**

Defendants' motion to dismiss the complaint (Dkt. No. 7) is granted.

So ordered.

Dated:   New York, New York
         May **27**, 2020

                                   *Louis L. Stanton*
                                   LOUIS L. STANTON
                                   U.S.D.J.